No. 640 July 16, 2025 13

***This is a nonprecedential memorandum opinion
pursuant to ORAP 10.30 and may not be cited
except as provided in ORAP 10.30(1).***

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

In the Matter of S. J. M. A. S.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*and*

S. J. M. A. S.,
*Respondent,*

*v.*

R. S.,
*Appellant.*

Umatilla County Circuit Court
23JU04283; A185914

Robert W. Collins, Jr., Judge.

Argued and submitted May 28, 2025.

Kyle Sessions Vazquez, Deputy Public Defender, argued the cause for appellant. Also on the briefs was Shannon Storey, Chief Defender, Juvenile Appellate Section, Oregon Public Defense Commission.

Inge D. Wells, Assistant Attorney General, argued the cause for respondent. Also on the brief were Dan Rayfield, Attorney General, and Benjamin Gutman, Solicitor General.

Before Shorr, Presiding Judge, Powers, Judge, and Pagán, Judge.

SHORR, P. J.

Affirmed.

**SHORR, P. J.**

In this juvenile dependency case, father appeals from a judgment changing the permanency plan for his daughter, S, from reunification to adoption.[1] In two assignments of error, he contends that the juvenile court erred (1) in ruling that the efforts of the Oregon Department of Human Services (ODHS) toward reunification were reasonable and (2) in changing the permanency plan away from reunification. We reject father's first assignment of error, and, having done so, we need not reach the second. Accordingly, we affirm.

Father has not requested *de novo* review, and it is not warranted in this case. "We are therefore bound by the juvenile court's factual findings as to what efforts [ODHS] has made, so long as there is any evidence in the record to support them." *Dept. of Human Services v. K. G. T.*, 306 Or App 368, 370, 473 P3d 131 (2020). Whether ODHS's efforts constitute "reasonable efforts" under ORS 419B.476(2)(a) is a question of law that we review for legal error. *Id.* "Reasonable efforts to reunify a child with [their] parent focus on ameliorating the adjudicated bases for jurisdiction and give parents a reasonable opportunity to demonstrate their ability to adjust their conduct and become minimally adequate parents" and the efforts of ODHS "are evaluated over the entire duration of the case, with an emphasis on a period before the hearing sufficient in length to afford a good opportunity to assess parental progress." *Dept. of Human Services v. J. L. M.*, 328 Or App 722, 726, 538 P3d 914 (2023) (brackets in original; internal quotation marks omitted). ODHS "is not excused from making reasonable efforts toward reunification simply because a parent is incarcerated." *Id.* at 727 (internal quotation marks omitted).

We provide background to give context to our decision. S was born in January 2021. Father met S once not long after her birth, but he was incarcerated shortly thereafter and remains so; his expected release date from prison is in May 2026. S has been in her current placement of substitute care since August 2023, and jurisdiction over S was established in October 2023.[2]

---

[1]  Mother is not a party to this appeal.

[2]  The placement is a home where S has been since she was about eight months old—sometimes living there with mother. The resource parent was previously a resource parent for mother and is known to S and has a bond with her.

Father admitted the sole jurisdictional basis regarding him, which is that he is "incarcerated and unavailable to be a custodial resource." He was ordered to participate in various services: to comply with conditions of probation, complete a parent education class, sign releases of information, maintain contact with ODHS, and participate in visits with S. Father is a registered sex offender with sex offenses against minors. Because of that history, the Department of Corrections would not allow father to have in-person visits with S. ODHS made arrangements instead for father to have visits via video, and the first one took place on September 24, 2023. That visit was the first time S met father and was told that he was her "daddy."

Father had five video visits in all, with the last one being on February 27, 2024. ODHS suspended the visits because they seemed to be having a negative effect on S, which manifested in various ways. At a review hearing in July 2024, at which father asked for his visits with S to resume, the juvenile court agreed with the temporary suspension of visits and the plan proposed by ODHS to put services in place with the goal of reinstating visits in a manner that would be best for S and her future relationship with father.

At the permanency hearing in October 2024, father asserted that it was premature to say that ODHS had made reasonable efforts and he requested that the plan remain reunification. In his written closing argument filed a week after the hearing, he argued that the juvenile court should find that the testimony of the ODHS permanency caseworker was not credible, and he questioned the extent of S's distress following visits. He also argued that ODHS had "done little to address" the "seemingly unsupported allegations" that S was experiencing night terrors following visits and stated that he

"has yet to have an opportunity to resume visits with [S]. He has done everything that ODHS has asked him to do. ODHS has failed to use reasonable efforts to carry out the plan of reunification because it failed to take any meaningful steps for several months to address the child's concerns since it suspended visits in February."

He asked the juvenile court to find that ODHS had failed to make reasonable efforts and to deny the requested change of plan. The juvenile court found "that the video visits created a level of trauma for the child that appears to be very unhealthy for her," determined that ODHS had made reasonable efforts, and changed the permanency plan from reunification to adoption.

On appeal, father challenges the juvenile court's reasonable efforts determination; however, his argument is qualitatively different in certain respects. Father argues that the juvenile court erred in ruling that the department's reunification efforts were reasonable where the department failed to provide ongoing visitation, to provide needed parenting classes, and to investigate a potential family placement for S, and therefore failed to help father mitigate the effects of his incarceration. Father's arguments about lack of parenting classes and failure to investigate a potential family placement are unpreserved. *See Peeples v. Lampert*, 345 Or 209, 219-20, 191 P3d 637 (2008) (policies underlying preservation requirement include providing "a trial court the chance to consider and rule on a contention," ensuring fairness to an opposing party, and fostering "full development of the record, which aids the trial court in making a decision and the appellate court in reviewing it."); ORAP 5.45(1) ("No matter claimed as error will be considered on appeal unless the claim of error was preserved in the lower court ***."); *State v. Montgomery*, 256 Or App 222, 228, 300 P3d 221, *rev den*, 354 Or 148 (2013) (concluding that the defendant's argument was not preserved where his argument on appeal was "qualitatively different than the contentions that defendant advanced below"). Father does not request plain error review, and, in any event, any error was not plain regarding those two contentions; we reject them.

We briefly address father's assertion that ODHS's efforts did not qualify as reasonable because ODHS failed to provide father the opportunity to develop a relationship with S after it suspended visits and then moved to change the plan before the visits resumed. Having reviewed the record, we conclude that the juvenile court's factual findings regarding the trauma that the video visits caused to

S are supported by the evidence in the record. In addition, under the circumstances here, the efforts that ODHS made to obtain counseling for S and to have her best interests evaluated so that a safe plan could be implemented for reinstating visitation were reasonable, and the juvenile court did not err.

Affirmed.